UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DERRICK EQUALLA THURMOND,

        Plaintiff,

        v.                               Case No. 18-cv-1047-pp

FOREST COUNTY POTAWATOMI COMMUNITY
*d/b/a Potawatomi Bingo Casino,*
DUSTIN CHURCH, AARON ARMSTRONG,
TRAVIS GERVAIS, DONALD SCHOFIELD,
and ROBERT BALAKA,

        Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (DKT. NO. 25),
ALLOWING PLAINTIFF TO FILE AN AMENDED COMPLAINT BY MARCH 6,
2020 AND DENYING MOTION TO APPOINT COUNSEL (DKT. NO. 23)**

---

On July 10, 2018, the plaintiff, representing himself, filed a complaint

against the Forest County Potawatomi Community and several employees of

the Potawatomi Bingo Casino.[1] Dkt. No. 1. The complaint alleges that the

defendants discriminated against him based on his race and his verbal tic.

---

[1] In the complaint he filed on July 10, 2018, the plaintiff named as defendants
Potawatomi Hotel and Casino, Dustin Church, Aaron Armstrong, Travis
Gervas, Don Schofield and Robert Balaka. Dkt. No. 1 at 1. On August 30,
2018, the plaintiff filed a one-page document. Dkt. No. 12. It is the first page of
this district's complaint form; at the top, there is a handwritten notation
reading "AMEND Names of the parties." Id. The number of this case appears in
the "Case Number" field. The document lists the same defendants as the
original complaint, except that in place of "Potawatomi Hotel and Casino," the
plaintiff listed "Forest County Potawatomi Community." Id. The court assumes
that the plaintiff filed this document solely to substitute the correct name of
the first defendant.

Several weeks later, plaintiff filed a motion to appoint counsel. Dkt. No. 23. The defendants have filed a motion to dismiss the complaint for failure to state a claim, arguing that the relevant federal laws don't apply to Indian tribes or their employees. Dkt. Nos. 25, 26. The plaintiff has not responded to the motion. The court will deny the motion to appoint counsel and grant the defendants' motion to dismiss.

## I.      Factual Allegations

When considering a motion to dismiss, the court must accept all well-pled facts as true and make all reasonable assumptions in the plaintiff's favor. AnchorBank, FSB v. Hofer, 649 F.3d 610, 614 (7th Cir. 2011). The court takes the facts from the plaintiff's complaint.

The plaintiff says that he has a "slight speech impediment." Dkt. No. 1 at 2, 4. The plaintiff does not identify his race or ethnicity in the complaint, but he alleges that defendant Church told him he needed to "practice to sound like a Caucasian speaking standard English," id., and that he applied for positions that were given to "Caucasians [sic] officers and lighter pigmentation officers," id. at 3. He also says, in the last paragraph of the complaint, that he has "black skin." Id. at 5.

The complaint states that the plaintiff was a security line officer for "Potawatomi Hotel & Casino." Id. at 4. He indicates that he wrote reports on theft, "patron and team member medicals, presence of unauthorized persons and unusual occurrences." Id. The complaint also says that the plaintiff "advised patrons about rule infractions, proper identification [and] house

2

rules," and that he "verbally evicted banned patrons from premises." Id. The plaintiff asserts that he never was late for or absent from work and was twice named Most Valuable Officer (MVO). Id.

The complaint alleges that between September 28, 2017 and April 18, 2018, the plaintiff was discriminated against and racially stereotyped by "the leaders of 2nd shift Security department;" specifically, manager Dustin Church, assistant manager Aaron Armstrong, supervisors Don Schofield and Robert Balaka and assistant director Travis Gervas. Id. The complaint identifies four types of alleged discrimination. First, the plaintiff alleges that he was passed over for three security job openings that went to Caucasian or lighter-skinned people who were hired after him. Id. at 3. Specifically, he accuses "Dustin Church and Assistant Director Travis [Gervais]" of passing him up for these positions. Id.

Second, the complaint alleges that Church made racist or offensive comments about the plaintiff's speech impediment. Id. at 2, 4. For example, the plaintiff alleges that Church told him that he "sounds ghetto and incompetent" and that the plaintiff needed to "practice to sound like a Caucasian speaking standard English." Id. The plaintiff alleges that in one instance, Church "told Assistant Manager Ed Zamora 'I can imagine if unit 77 ([the plaintiff]) was drugged up, his speech will slow down and maybe we can understand him' and he begin to laugh hysterically." Id. at 4. The plaintiff asserts that whether Church was joking or not, the comment was unfair, unprofessional and biased, and says that Church "constantly tried to" depersonalize him. Id.

3

Third, the plaintiff alleges that on March 14, 2018, he was "falsely accused and reprimanded" by security supervisor Pamela Monk and assistant manager Aaron Armstrong, because he wanted to write a "team member statement" against them for falsely accusing him of shouting at Monk "concerning a patron who had only an ID picture on her cell phone." Id. The plaintiff says that Armstrong told him that surveillance showed that he hadn't committed any infractions against Monk, and that he was following policy by requiring ID other than phone ID. Id. The plaintiff alleges that Armstrong threatened the plaintiff with "hard discipline" if the plaintiff were to write the team member statement. Id. The plaintiff says that five days later, he received "a written write up" falsely accusing him of shouting at Monk, despite what the surveillance showed. Id. The plaintiff wrote a team member statement against Armstrong for "verbally threatening [him] and denying [him] the rights as an employee to write a team member statement." Id. He alleges, however, that Church would not accept the statement, telling him that if he turned in the statement, the plaintiff would "not like the outcome and the consequences of termination or suspension pending termination." Id.

Fourth, in the first week of April 2018, the plaintiff approached supervisor Robert Balaka "concerning picking [his] spot in rotation" since he'd won MVO; the plaintiff says that picking one's spot in the rotation is a privilege granted to the MVO winner. Id. The plaintiff asked for "two days to be train[ed] behind the Security Desk and three days of all day rover." Id. The plaintiff alleges that Balaka responded that he doubted the supervisors and managers

4

would allow the plaintiff to train behind the security desk, but that he'd check; he alleges that an hour later, Balaka returned, saying that Church, Armstrong, and supervisor Don Schofield had said "No, . . . you must be a certain kind of person." Id. at 5. The plaintiff asked what they meant, and Balaka responded by laughing and saying, "you cannot sound ghetto and incompetent." Id.

The plaintiff alleges that "[t]hey have the majority of Caucasians and lighter pigmentation officers working behind the Security Desk and Cobra." Id. He said that new Caucasian officers "who came after" him were working the security desk, Cobra and swing shift. Id. The plaintiff says that he "conveyed this degrading and discouraging information" to assistant manager Ed Zamora around April 11, 2018, "to no avail." Id. He alleges that on April 14, 2018, he "conveyed this situation" to assistant director Travis Gervas, whose face "changed to extreme anger" and who didn't respond to the plaintiff or speak to him, but closed the door in the plaintiff's face. Id. He says that after "they" thought he'd walked away, he heard Gervas telling the supervisors, "we got to get rid of him (unit 77)." Id.

The complaint alleges that "they" have suspended him pending termination "base[d] on lies stating that the camera and mics located at ComSec, recorded [him] making inappropriate comm[ent]s to another female officer which is a wicked lie and unproven lies." Id.

**II.     Motion to Dismiss (Dkt. No. 25)**

A.     Standard

The defendants have asked the court to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which a federal court may grant relief. Dkt. No. 25. When evaluating a motion to dismiss under Rule 12(b)(6), the court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiffs' favor. AnchorBank, FSB v. Hofer, 649 F.3d 610, 614 (7th Cir. 2011). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." Int'l Equip. Trading, Ltd. v. Illumina, Inc., 312 F. Supp. 3d 725, 730 (N.D. Ill. 2018) (quoting Gibson v. City of Chi., 910 F.2d 1510, 1520 (7th Cir. 1990)).

B.     Analysis

Page 4 of the court's form complaint allows a plaintiff to check a box to indicate whether he is suing for a violation of federal law or is suing a citizen of another state for a violation of state law. In this case, the plaintiff didn't mark either box. Dkt. No. 1 at 6. It appears to the court, however, that the plaintiff is a Wisconsin citizen and has sued Wisconsin citizens. The court will assume that he is suing for alleged violations of federal law.

The defendants speculated that the plaintiff may be trying to allege a violation of his civil rights under 42 U.S.C. §1983[2], a violation of Title VII (42 U.S.C. §2000e-2(a) (which prohibits employers from discriminating based on protected classes such as race) or a violation of the Americans with Disabilities Act. Dkt. No. 26 at 2. The defendants assert that regardless of which of these causes of action the plaintiff may have intended to pursue, they are immune from suit under the doctrine of tribal sovereign immunity. Id. at 4. The court agrees.

Forest County Potawatomi Community, Wisconsin is a federally-recognized Indian tribe. See INDIAN ENTITIES RECOGNIZED AND ELIGIBLE TO RECEIVE SERVICES FROM THE UNITED STATES BUREAU OF INDIAN AFFAIRS, 83 Fed. Reg. 4237 (Jan. 30, 2018). It is an "uncontroversial, two-century-old concept that Indian tribes have inherent sovereign authority." Meyers v. Oneida Tribe of Indians of Wis., 836 F.3d 818, 823 (7th Cir. 2016) (citing Michigan v. Bay Mills Indian Cmty., ____ U.S. ___, 134 S. Ct. 2024, 2030 (2014)). "Indian tribes possess 'common-law immunity from suit traditionally enjoyed by sovereign powers. . . . Thus unless and until Congress acts, the tribes retain their historic sovereign

_____

[2]The basis for the defendants' speculation that the plaintiff may have been trying to bring a claim under 42 U.S.C. §1983 is the fact that when the clerk's office docketed the complaint, it categorized the "Cause," in the upper left-hand corner of the docket caption, as "42:1983 Civil Rights (Employment Discrimination)." That categorization is not an indication that someone from the court has made a legal determination that the plaintiff is trying to bring a §1983 claim. The court's docketing system requires the clerk's office staff member who dockets the complaint to select a category; when a *pro se* plaintiff files a complaint that doesn't specify a cause of action, the staff member (who is not a lawyer) does his or her best to select a category that seems to fit the allegations the plaintiff made in the complaint.

authority.'" Id. Generally, then, the Forest County Potawatomi Community cannot be sued unless it waives its immunity and agrees to be sued.

Specifically, if the plaintiff was trying to allege that the Forest County Potawatomi Community and its employees were state actors who violated his federal constitutional rights (perhaps to equal protection), he could not state a claim. Section 1983 of Title 42 allows a person to sue a person who violated his constitutional rights while "acting under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." That means that a person is liable under §1983 only if that person was an employee, officer or agent of a state, a territory or the District of Columbia. These defendants were not employees of Wisconsin, or of a territory or of the district. They are a sovereign Indian tribe and employees of that tribe. See Louis v. Stockbridge-Munsee Cmty., Case No. 08-C-558, 2008 WL 4282589, at *3 (E.D. Wis. Sept. 16, 2008). And an Indian tribe is not a "person" subject to suit under §1983. Inyo Cty., Cal. v. Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony, 538 U.S. 701, 709 (2003) ("we will assume for the purposes of this opinion [] that Native American tribes, like States of the Union, are not subject to suit under § 1983.").

Perhaps the plaintiff is trying to sue the defendants for employment discrimination based on race, in violation of Title VII. "Under Title VII, an employer may not discriminate based on 'race, color, religion, sex, or national origin.'" Abrego v. Wilkie, 907 F.3d 1004, 1012 (7th Cir. 2018) (quoting 42 U.S.C. §2000e-2(a)). But Title VII specifically says that "the term 'employer' . . .

does not include . . . an Indian tribe." 42 U.S.C. §2000e(b). Thus, a person cannot sue an Indian tribe for violating Title VII, even if the tribe discriminated against him in his employment based on his race. And as to the individual defendants, "a supervisor does not, in his individual capacity, fall within Title VII's definition of employer." Williams v. Banning, 72 F.3d 552, 555 (7th Cir. 1995).

Finally, the defendants speculated that the plaintiff might have been trying to bring a claim that they discriminated against him based on his disability (presumably his slight speech impediment) in violation of the Americans with Disabilities Act. The ADA prohibits "covered entities" from discriminating against qualified people in employment based on a disability. 42 U.S.C. §12112(a). A "covered entity" is an employer, employment agency, labor organization, or joint labor-management committee. 42 U.S.C. §12111(2). Like Title VII, the ADA specifically excludes Indian tribes from the definition of "employer." 42 U.S.C. §12111(5)(B)(ii). So the plaintiff cannot state an ADA claim against the Forest County Potawatomi Community even if it discriminated against him based on a disability. And as for the supervisors, "individuals who do not otherwise meet the statutory definition of 'employer' cannot be held liable under the ADA." U.S. E.E.O.C. v. AIC Sec. Investigations, Ltd., 55 F.3d 1276, 1282 (7th Cir. 1995).

The court concludes that the plaintiff has not stated a claim against the Forest County Potawatomi Community under §1983, Title VII or the ADA, because the tribe is not subject to suit under those statutes. Nor has the

plaintiff stated a claim against the individual defendants under those statutes. The court will not allow the plaintiff to proceed on this complaint.

For the reasons discussed above, the court is not confident that the plaintiff will be able to state any claim recognizable in federal court against these defendants. But the court will give him a chance to try, for two reasons. First, the Seventh Circuit has encouraged courts to give self-represented, indigent plaintiffs at least one opportunity to amend their complaints. See Luevano v. Wal-Mart Stores, Inc., 722 F.3d 1014, 1025 (7th Cir. 2013). Second, the plaintiff did not respond to the defendants' motion to dismiss. That could be because he was waiting for the court to rule on his motion to appoint a him a lawyer. It could be because he did not know that he *could* respond, or did not know the deadline by which he had to respond (under Civil Local Rule 7(b), the plaintiff could have filed a response to the motion within twenty-one days of the date he was served with it). He ought to at least get that opportunity. The court will give the plaintiff a deadline by which to file an amended complaint that states a claim for which a federal court can grant relief.

The court will send the plaintiff a copy of the form complaint. The plaintiff should write the word "Amended" at the top of the first page, next to the word "Complaint." He must fill out the entire complaint form—he cannot simply direct the court and the defendants to refer to his previous complaint. He must indicate on page 4 whether he is suing for violations of federal law or state law. He must name as defendants only people who can be sued for the

10

sorts of claims he is trying to bring. The court also is sending the plaintiff a copy of the court's "Answer to Pro Se Litigants' Common Questions" brochure.

Finally, the court advises the plaintiff that the Eastern District of Wisconsin Bar Association has a Federal Legal Assistance Program. The court is including with this order information about that program. If the plaintiff has access to a computer, he can look up the program on-line by going to https://edwba.org and clicking on the "Legal Assistance" link on the black banner at the top of the home page.

**III.    Second Motion to Appoint Counsel (Dkt. No. 23)**

While there is no constitutional right to counsel in civil cases, Congress has given district courts discretion to appoint attorneys for litigants who cannot afford them. 28 U.S.C. §1915(e)(1); Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court, however, does not have the resources to hire a lawyer for every civil plaintiff, and there are not enough volunteer lawyers to represent every civil party who asks for one. When a party in a civil case asks the court to recruit a volunteer lawyer to represent him, the court must determine whether the party has made a reasonable attempt to obtain counsel on his own, and whether he appears competent to litigate the case himself. Pruitt v. Mote, 503 F.3d 647, 654 (7th Cir. 2007)).

As Judge Joseph explained when she denied the plaintiff's original motion, the plaintiff can satisfy the first requirement by providing the court with the names, addresses, and contact information for three attorneys that he attempted to contact to take his case. See Dkt. No. 7 at 2. The plaintiff's new

motion does that. Dkt. No. 23. The plaintiff says that he "searched diligently via phone, social media, and in person to obtain an attorney to no avail." Id. He lists the names, addresses, and phone numbers of three attorneys: Attorney Barbara Zack Quindel; Legal Action of Wisconsin, Inc.; and Attorney Jill Kastner. Id. The court finds that the plaintiff has satisfied the first prong of the Pruitt requirement.

Once the party demonstrates that he has made reasonable attempts to hire counsel, the court must decide "whether the difficulty of the case— factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013) (citing Pruitt, 503 F.3d at 655). The court must consider two related factors: the "difficulty of litigating specific claims" and the "plaintiff's individual capacity to litigate those claims without counsel." Pennewell, 923 F.3d at 490 (quoting Pruitt, 503 F.3d at 655). "The question is not whether the *pro se* litigant would be as effective as a lawyer, but rather whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Pennewell, 923 F.3d at 490 (quoting Pruitt, 503 F.3d at 655).

When making its decision, the court should examine "all tasks that normally attend litigation," such as gathering evidence, making and responding to court filings and motions, completing discovery and putting on a trial. Pennewell, 923 F.3d at 491 (quoting Pruitt, 503 F.3d at 655). The court should consider as many of the plaintiff's personal capacities as possible, including the

12

plaintiff's literacy, communication skills, education, prior litigation experience, physical limitations and any other characteristic that could limit the plaintiff's ability to litigate. Pennewell, 923 F.3d at 491 (quoting Pruitt, 503 F.3d at 655). The court also should "consider the complexities of the advanced stages of litigation when the case has moved past the pleading stage." Pennewell, 923 F.3d at 490 (quoting Perez v. Fenoglio, 792 F.3d 768, 785 (7th Cir. 2015)).

The plaintiff says in his second motion that he doesn't have the legal knowledge or wisdom to represent himself. Dkt. No. 23. He also says that he doesn't have the money to hire a lawyer. Id. The court understands how difficult it is for someone with no legal training to represent himself in a lawsuit and has no reason to doubt the plaintiff's statement that he can't afford to hire a lawyer.

But plaintiff has shown that he can effectively communicate in writing. The court has been able to understand the claims in his complaint—he is articulate and clearly describes the things that happened to him. He appears to be quite literate. He's shown that he can follow the legal requirements for employment discrimination claims: he filed a complaint with the EEOC, received a Notice of Right to Sue letter, and timely filed his complaint and included the Notice of Right to Sue letter. See Dkt. No. 1. He's shown that he can follow the court's directions—Judge Joseph told him he needed to provide proof that he'd tried to find a lawyer on his own, and he provided that proof. The plaintiff has not alleged that he has any physical limitations that would interfere with his filing documents in court. Other than the fact that the

plaintiff does not have legal training, the court cannot identify any factors which would prevent the plaintiff from representing himself. The court will deny the plaintiff's motion without prejudice. This means that if he files an amended complaint, and if the court allows that amended complaint to proceed, he may renew his request for appointment of counsel if and when the case become too complicated for him to handle himself.

## IV.    Conclusion

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 23.

The court **GRANTS** the defendant's motion to dismiss for failure to state a claim. Dkt. No. 25.

The court **ORDERS** that if he wishes to do so, the plaintiff must file an amended complaint that states a claim for which a federal court can grant relief. The court **ORDERS** that the plaintiff must file the amended complaint in time for the court to *receive* it by the end of the day on **March 6, 2020**. If the court does not receive the amended complaint by that deadline, the court will dismiss and close the case.

Dated in Milwaukee, Wisconsin this 30th day of January, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

14